IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-01845-CNS-KAS

FUNDIENT INVENTORY LLC,

    Plaintiff/Counter-defendant,

v.

OUIBY, INC. d/b/a KICKFURTHER,

    Defendant/Counter-plaintiff/Third-party Plaintiff,

v.

SCOTT LASCELLES,

    Third-Party Defendant.

## ORDER

Before the Court are two motions to dismiss: Fundient's Rule 12(b)(6) Partial Motion to Dismiss and Rule 12(f) Motion to Strike Ouiby, Inc.'s Counterclaims, ECF No. 51, and Scott Lascelles's Rule 12(b)(6) Partial Motion to Dismiss Ouiby, Inc.'s Third-Party Claims, ECF No. 61. For the following reasons, both motions are GRANTED in part and DENIED in part.

### I. FACTUAL BACKGROUND[1]

Ouiby, Inc. (Kickfurther) is an online inventory financing platform that connects businesses that need inventory financing (brands) with financial backers (funders or

---

[1] The background facts are taken from Kickfurther's counterclaims. ECF No. 44.

1

buyers). ECF No. 44, ¶ 1 (Counterclaim). Funders find brands offering consignment opportunities (Co-Ops) through the Kickfurther platform. *Id.* The buyers choose what businesses to support, commit to fund inventory, and participate in consignments with their selected businesses. *Id.* As the inventory sells, the businesses provide payment for the sales. *Id.*

In March 2021, Kickfurther hired Defendant Scott Lascelles as an independent contractor and financial technology consultant and signed a Master Independent Contractor Agreement (MICA) with him. *Id.*, ¶ 2. Lascelles then introduced Fundient and Kickfurther, who soon after entered into the Consignment Opportunity Financing Agreement (Financing Agreement). *Id.*, ¶¶ 23, 27–28, 30. Fundient hired Lascelles to manage its $20 million portfolio, along with Fundient CEO Sal Mirran. *Id.*, ¶ 31.

Fundient performed its own due diligence to select each Co-Op opportunity and implemented its own processes, overseen by Lascelles and Mirran. *Id.*, ¶ 3. Fundient suffered losses and initiated this lawsuit on July 20, 2023. ECF No. 1. Kickfurther alleges that Fundient sought to blame Kickfurther for its losses, when the losses were actually the result of Fundient's bad judgment, failed evaluations and diligence, impatience, and refusal to comply with applicable agreements. *Id.*, ¶ 4. Kickfurther further alleges that Fundient violated its contractual obligations, and that Lascelles provided Fundient with confidential information that he had acquired from his role at Kickfurther, violating his contractual obligations to Kickfurther. ECF No. 44, ¶¶ 45–48; 56–61.

The Court previously denied Kickfurther's partial motion to dismiss Fundient's breach of contract claim. ECF No. 42. Kickfurther then filed four counterclaims against

Fundient: (1) breach of the Financing Agreement; (2) breach of the implied covenant of good faith and fair dealing of the Financing Agreement; (3) tortious interference with Kickfurther's contracts with Scott Lascelles and Co-Op brands; and (4) civil conspiracy. ECF No. 44; ECF No. 55 at 5. Kickfurther also brought four third-party claims against Scott Lascelles: (1) breach of his Master Independent Contractor Agreement and Advisor Agreement; (2) breach of the implied covenant of good faith and fear dealing of the MICA and Advisor Agreement; (3) tortious interference with Kickfurther's contracts with Co-Ops brands and the Financing Agreement; and (4) civil conspiracy. ECF No. 44; ECF No. 51 at 3.

Fundient's present motion seeks dismissal of Kickfurther's tortious interference, civil conspiracy, and breach of implied covenant of good faith and fair dealing claims for failure to state a claim under Rule 12(b)(6). ECF No. 51 at 3. It also seeks to strike Paragraphs 37–39 from Kickfurther's counterclaims under Rule 12(f). *Id.* Lascelles's present motion seeks dismissal of Kickfurther's tortious interference, civil conspiracy, and breach of implied covenant of good faith and fair dealing claims for failure to state a claim under Rule 12(b)(6). ECF No. 61 at 1. The Court will address each in turn.

## II.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), the dispositive inquiry is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

3

defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court must take all the factual allegations in the complaint as true and "view these allegations in the light most favorable" to the nonmoving party. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). On a Rule 12(b)(6) motion, a court's function is "not to weigh potential evidence that the parties might present at trial, but to assess whether the [] complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). The same standard applies to allegations in a counterclaim: the Court must accept the well-pleaded factual allegations as true. *See Openwater Safety IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1153 (D. Colo. 2020).

### A. Federal Rule of Civil Procedure 12(f)

Fed. R. Civ. P. 12(f) governs motions to strike: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of Rule 12(f) is to conserve time and resources that would be spent litigating matters that will not impact the case's outcome. *USI Ins. Servs., LLC v. Morris*, No. 22-cv-180-GPG-MDB, 2024 WL 1436316 (D. Colo. Feb. 21, 2024). Motions to strike are disfavored and are only granted in rare circumstances: when the allegations have no bearing on the controversy and the movant can show that it has been prejudiced. *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001). Even if the moving party meets its burden to prove that allegations in a pleading violate Rule 12(f), the Court retains discretion to grant or deny the motion. *Mueller v. Swift*, No. 15-cv-

4

01974-WJM-KLM, 2016 WL 11692343 at *2 (D. Colo. Apr. 14, 2016). "[A]ny doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party." *Menapace v. Alaska Nat'l Ins. Co.*, No. 20-cv-00053-REB-STV, 2021 WL 2012324 at *5 (D. Colo. May 20, 2021). "Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy." *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997).

### III. ANALYSIS

#### A. Fundient's Motion

##### i. Tortious Interference Claim

Kickfurther alleges that Fundient induced Lascelles to breach the MICA and Advisor Agreement and induced brands to violate Kickfurther's terms of use by engaging in off-platform dealings, amounting to tortious interference. ECF No. 44, ¶¶ 88–95; ECF No. 55 at 6. The elements of tortious interference are as follows: (1) existence of a contractual relationship between the plaintiff and a third party; (2) defendant knew or reasonably should have known of the contract; (3) defendant intentionally and improperly interfered with that contract; (4) defendant's conduct caused the breach or non-performance of the contract by the third party; and (5) plaintiff suffered damages as a result. *Cunningham Lindsey U.S., Inc. v. Crawford & Co.*, No. 17-cv-03041-CMA-KLM, 2018 WL 6307865 (D. Colo. Dec. 3, 2018). Fundient requests dismissal of Kickfurther's

tortious interference claim, arguing that Kickfurther does not sufficiently allege that the interference was improper.[2]

In considering whether an actor's conduct is improper, courts weigh the following factors: "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995). Interference is more likely to be improper where there is an existing contract, rather than interference with a prospective business relationship. *Autotech Techs., LP v. Palmer Drives Controls and Sys., Inc.*, No. 19-cv-00718-PAB-NRN, 2020 WL 1974759 at *4 (D. Colo. Apr. 24, 2020). If the parties are competitors, there is no improper interference with a contract if "(1) [the conduct] concerns a matter of competition between the defendant and plaintiff; (2) the defendant does not employ wrongful means; (3) the action does not amount to an unlawful restraint of trade; and (4) the defendant's purpose is, at least in part, to advance its own interest." *Phillips v. Carpet*

---

[2] Kickfurther argues that interference does not need to be improper unless it is between competitors, citing *Moxtek, Inc. v. U.S. Welding, Inc.*, No. 22-cv-143, 2023 WL 2346316 (D. Utah Mar. 3, 2023) ("[W]hereas Utah law requires a plaintiff to establish that the interference with contract occurred by 'improper means,' Colorado law has no such requirement unless the interference is between competitors."). However, the Utah court did not cite to any caselaw to support that proposition. Kickfurther's only other support for this claim are mischaracterizations of the cases cited. *Cunningham Lindsey U.S. Inc.*, 2018 WL 6307865 at *4 ("When the parties are engaged in business competition, the 'improper means' element is satisfied by showing that the interference took the form of conduct that is 'intrinsically wrong' as well as conduct that is illegal, in violation of professional standards, achieved through violence or threats, arising from misrepresentation or unfounded litigation, or via defamation."); *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1196 (Colo. App. 2009). ("There must also be proof that such interference was 'improper.'"). Colorado courts have clearly held that "the interference must be both intentional and improper," although what counts as improper may be different for competitors. *Amoco Oil Co.*, 908 P.2d at 501.

*Direct Corp.*, No. 16-cv-02438-MEH, 2017 WL 121630, at *13 (D. Colo. Jan. 10, 2017). Wrongful means may include threats of physical violence, fraud, civil suits, criminal prosecutions, violations of business ethics and customs, and, in some circumstances, economic pressure. *Cunningham Lindsey U.S. Inc.*, 2018 WL 6307865 at *4 (citing Section 767 of the Restatement (Second) of Torts).[3]

Fundient argues that Kickfurther's "boilerplate pleading" and "conclusory statement" that the interference was improper is insufficient to state a claim. The Court agrees. The only allegations that Kickfurther makes about improper interference are that "Fundient's interference with the contracts was improper" and that "Fundient intended to and did induce a breach of Kickfurther's terms of use by brands by, including but not limited to, inducing brands to engage in off-platform communications and dealings." ECF No. 44, ¶¶ 93–94. Threadbare recitals of the elements of a cause of action are not enough. Kickfurther does not allege facts that would allow the Court to conduct the required analysis based on the seven factors laid out in *Amoco Oil* and the Restatement of Torts Section 767. For instance, Kickfurther does not allege how the nature of the conduct was improper—there are no allegations of *how* Fundient induced brands to engage in off-platform communication.[4] Without any allegations that there were threats,

---

[3] Whether economic pressure constitutes wrongful means depends on the circumstances, the object sought to be accomplished, the degree of coercion involved, the extent of harm threatened, the effect on neutral parties, the effects on competition, and the general reasonableness and appropriateness of the pressure. *Cunningham Lindsey U.S. Inc.*, 2018 WL 6307865 at *4.

[4] In its response, Kickfurther does argue that the nature of Fundient's actions is wrongful because "Fundient's independently actionable breaches of the Financing Agreement and terms of use (for example, off-platform communications) constitute improper means." ECF No. 55 at 7. However, the examples of independently actionable conduct that courts have recognized are misappropriation of trade secrets and breach of a confidentiality agreement. *Energex Enters. v. Anthony Doors, Inc.*, 250 F. Supp. 2d 1278, 1285 (D. Colo. 2003). Breaching a contract is different in nature than sharing confidential information and is not "intrinsically wrong conduct." Kickfurther fails to cite to any caselaw suggesting that breaching a separate

economic pressure, a violation of business norms, or any other wrongful means, it is impossible to determine whether the first, most important, factor is met. Similarly, Kickfurther did not allege facts that would indicate Fundient's motive or any of the interests of the involved parties. Because Kickfurther did not adequately plead the "improper" element of its tortious interference claim, the Court grants the motion to dismiss that claim.

### ii. Civil Conspiracy Claim

Fundient next argues that Kickfurther's civil conspiracy claim fails because Kickfurther did not sufficiently plead the first four elements of civil conspiracy. The elements of a civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result. *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995).

Fundient first argues that Lascelles and Fundient are not two distinct people because Lascelles was acting as Fundient's agent. While it is true that a "corporation and its employees do not constitute the 'two or more persons' required for a civil conspiracy," there is a caveat: "at least if the employees are acting on behalf of the corporation and not as individuals for their individual advantage." *Titan Mfg. Sols, Inc. v. Nat'l. Cost, Inc.*, 2020 WL 996880 at *2 (D. Colo. Mar. 2, 2020). Kickfurther alleges four examples of Lascelles acting for his own individual advantage: to "pass the blame for Co-Ops that he had chosen to fund; distance himself from Kickfurther's processes; create a misleading

---

contract constitutes wrongful means. Additionally, the argument that Fundient induced the brands to breach their contracts using the improper means of breaching its own contract does not appear in the counterclaims.

picture; and fan the flames of Fundient's dissatisfaction." ECF No. 44, ¶ 4. These four motivations constitute more than a conclusory statement, and so Kickfurther has plausibly alleged that Lascelles was acting for his own advantage rather than Fundient's.

Fundient further argues that there is no underlying wrong, because Kickfurther's tortious interference claim against Lascelles fails and there is no other valid basis for the conspiracy claim. The Court disagrees, because the tortious interference claim against Lascelles survives dismissal, as discussed below.

Finally, Fundient argues that Kickfurther did not adequately plead a meeting of the minds.[5] The Court agrees. Kickfurther did not allege specific facts of a civil conspiracy against the Defendants; rather, it only alleged the bare elements of a civil conspiracy. The only allegations of civil conspiracy are that "Lascelles and Fundient agreed, by words or conduct, to accomplish an unlawful goal" and that "Lascelles and Fundient performed one or more unlawful acts to accomplish the unlawful goal." ECF No. 44, ¶¶ 104–07. The Court assumes that the unlawful goal was to tortiously interfere with the brands' contracts. However, while "a conspiracy may be implied by a course of conduct and other circumstantial evidence, there must be some indicia of an agreement in an unlawful means or end." *Schneider v. Midtown Motor Co.*, 854 P.2d 1322, 1327 (Colo. App. 1992) (internal citations omitted). Here, there is no indicia of an agreement in an unlawful means or end. The conduct Kickfurther points to—jointly managing Fundient's portfolio, overseeing Fundient's underwriters, and offering suggestions for Kickfurther's collections

---

[5] Lascelles also argued that Kickfurther did not adequately plead that there was an overt act. The Court disagrees, because Kickfurther has alleged that Lascelles contacted brands off platform and shared Kickfurther's confidential information, which qualifies as an overt act. ECF No. 44, ¶¶ 45, 57.

process—is unrelated to tortious interference, and appear to just be evidence of Lascelles working for Fundient. The Court finds that these allegations are insufficient to show an indicia of an agreement in an unlawful means or end. Because Kickfurther does not sufficiently plead that there was a meeting of the minds, the Court grants the motion to dismiss the civil conspiracy claims against Fundient.

### iii. Breach of Implied Covenant of Good Faith and Fair Dealing

Fundient then argues that the claim for breach of the implied covenant of good faith and fair dealing fails, because Kickfurther did not identify a discretionary provision in the Financing Agreement. ECF No. 51 at 10. The Court disagrees. Kickfurther identified several discretionary provisions, including the requirement that Fundient perform its "own due diligence," "timely" participate in votes, and not hold Kickfurther liable for "any false or unverified statements made by Brands," all of which require some discretion. ECF No. 44, ¶¶ 62, 58, 64. The Court declines to dismiss this claim.

### iv. Motion to Strike

Finally, Fundient argues that Paragraphs 37–39 of Kickfurther's counterclaims should be stricken because they are immaterial and impertinent to the claims asserted. ECF No. 51 at 11. These paragraphs reference Fundient's past litigation, and so, Fundient argues, are immaterial to the present case. *Id.* Fundient argues that the paragraphs may cause reputational harm to Fundient and to a non-party, Sal Mirran, and that Fundient will be prejudiced by these allegations.

The Court declines to strike these paragraphs for two reasons: Fundient has not met the standard for striking, and Fundient did not follow the Court's Uniform Civil Practice

Standards. Standard 7.1A(a)(5) requires: "All requests for the Court to take distinct actions must be contained in separate, written motions," with the exception of motions requesting different bases for the same relief. Here, Fundient is asking for two distinct actions: dismissing counterclaims and striking paragraphs from the counterclaims. Fundient should have filed two separate motions, and the Court could deny this request on that ground alone. However, the Court denies the motion to strike on the merits.

The Court finds that Fundient has not met its burden to show that these paragraphs have "no possible bearing" on the claims of the case. The allegations in Paragraph 39 indicate the existence of a "pattern of Fundient failing to take accountability for its own funding decisions." ECF No. 44, ¶ 39. Kickfurther argues that these allegations are specific facts that bolster its claims and that they speak to Fundient's motive, so are relevant. ECF No. 55 at 14. The Court must resolve any doubts in favor of the nonmoving party and agrees that facts that show motive and that bolster a party's claims have some bearing on the case. Because the standard highly disfavors striking, and because these paragraphs have some possible bearing on the case, the Court declines to strike Paragraphs 37–39 of Kickfurther's counterclaims.

### B. Lascelles's Motion

#### i. Tortious Interference Claim

Kickfurther similarly alleges that Lascelles engaged in tortious interference, by inducing brands to engage in off-platform communications and dealings and so breaching Kickfurther's terms of use. ECF No. 44, ¶¶ 96–103; ECF No. 66 at 5. Much of Lascelles's argument is the same as Fundient's.

11

Specifically, Lascelles argues that Kickfurther only alleged that the interference was improper without explaining how it was improper. However, Kickfurther did allege that "Lascelles provided Fundient with confidential information he had acquired from his role at Kickfurther." ECF No. 44, ¶ 4. Wrongful means can include "independently actionable conduct," like misappropriation of trade secrets or breach of a confidentiality agreement. *Energex Enters. v. Anthony Doors, Inc.*, 250 F. Supp. 2d 1278, 1285 (D. Colo. 2003). While *Energex* discussed these wrongful means in the context of interference with another's prospective business relations, actions are more likely to be improper in the context of interference with an existing contract. *See Autotech Techs., LP*, 2020 WL 1974759 at *4. Because breaching a confidentiality agreement can constitute wrongful means, Kickfurther adequately alleged improper means.

Lascelles next argues that he is an agent of Fundient, and so Kickfurther must allege that he was motivated solely by self-interest or a desire to harm Kickfurther. ECF No. 61 at 4–5. However, the standard for agents applies when the agent interferes with a contract to which their principal is a party; here, Kickfurther alleges that Lascelles tortiously interfered with the brands' contracts with Kickfurther, not Fundient's. *Meehan v. Amax Oil & Gas, Inc.*, 796 F. Supp. 461, 465 (D. Colo. 1992) ("An officer of a corporation generally will not be held personally liable for inducing the corporation's breach of its contract with another if the officer is acting within the scope of his official duties."); ECF No. 44, ¶ 101. Additionally, Kickfurther alleges that Lascelles was motivated in part by four self-interested reasons, unrelated to Fundient's interests: to "pass the blame for Co-Ops that he had chosen to fund; distance himself from Kickfurther's processes; create a

12

misleading picture; and fan the flames of Fundient's dissatisfaction." ECF No. 44, ¶ 4. Kickfurther also alleged that Lascelles was an independent contractor for Kickfurther, and so the agency standard does not apply. Regardless, because Lascelles's motivations were allegedly to harass or retaliate against Kickfurther, the standard has been adequately pleaded. *Meehan*, 796 F. Supp. at 465 ("In applying this test, Colorado courts have looked to whether the defendant acted in good faith to serve the corporation's interests and whether the defendant acted with malice towards the plaintiff or was motivated by a desire to harass or retaliate against the plaintiff."). Because Kickfurther adequately pleads the "improper" element of its tortious interference claim, the Court denies the motion to dismiss that claim.

> ii. *Civil Conspiracy Claim*

Lascelles repeats Fundient's arguments that the civil conspiracy claim fails. The Court finds that, as described above, Kickfurther did not adequately plead that there was a meeting of the minds, and so it similarly grants the motion to dismiss the civil conspiracy claim against Lascelles.

> iii. *Breach of Implied Covenant of Good Faith and Fair Dealing*

Lascelles then argues that the claim for breach of the implied covenant of good faith and fair dealing fails, because Kickfurther did not identify a discretionary provision in the Financing Agreement. ECF No. 61 at 10. The Court disagrees. Kickfurther identified several discretionary provisions, including the requirement that Lascelles not disclose confidential information unless it was "necessary to perform the Services," not undertake obligations that would "breach or conflict" with the Advisor Agreement, and not use

13

Kickfurther's confidential information except to perform the services, all of which require some discretion. ECF No. 44, ¶¶ 62, 58, 64. The Court declines to dismiss this claim.

## IV.  CONCLUSION

Consistent with the above analysis, Fundient's Rule 12(b)(6) Partial Motion to Dismiss and Rule 12(f) Motion to Strike Ouiby, Inc.'s Counterclaims, ECF No. 51, is GRANTED in part and DENIED in part. The claims of tortious interference and civil conspiracy are dismissed without prejudice. The motion is denied as to the good faith and fair dealing claim. The motion to strike is denied.

Lascelle's Rule 12(b)(6) Partial Motion to Dismiss Ouiby, Inc.'s Third-Party Claims, ECF No. 61, is also GRANTED in part and DENIED in part. The claim of civil conspiracy is dismissed without prejudice. The motion is denied as to the claims of good faith and fair dealing.

DATED this 26th day of August 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge